244 S.W.3d 397 (2007)
In the Interest of D.M. and W.M., Children.
No. 10-06-00407-CV.
Court of Appeals of Texas, Waco.
August 15, 2007.
Dissenting Opinion on Rehearing December 12, 2007.
*399 Richard G. Ferguson, Waco, for appellant.
John W. Segrest, McLennan County Dist. Atty., Waco, for appellee.
C. Kevin Keathley, Law Office of C. Kevin Keathley, Waco, for ad litem.
Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

OPINION
PER CURIAM.
Rhonda Moncrief brings this appeal from a decree terminating her parental rights. The judgment is affirmed. See Lozano v. Lozano, 52 S.W.3d 141, 143-44 (Tex.2001) (per curiam); see also Furman v. Georgia, 408 U.S. 238, 239-40, 92 S.Ct. 2726, 2727, 33 L.Ed.2d 346 (1972) (per curiam); Gilles v. Ware, 615 A.2d 533, 534 (D.C.1992) (per curiam).
Chief Justice GRAY concurs.
Justice REYNA concurs.
Justice VANCE dissents.
*400 TOM GRAY, Chief Justice, concurring.
The three opinions in this case are all worth study and analysis for a number of reasons. They present issues seldom presented and difficult to resolve as evidenced by the fact that no combination of two of the three judges could agree on how to properly dispose of this appeal. As the third to draft on the issues, I agree with some of each of the opinions presented by Justices Vance and Reyna. I also disagree with each. Because we all three would stop our analysis at different places for various reasons, I felt it was appropriate to address only the single issue" I would decide, jurisdiction, and to concede that while technically this would mean I should vote for dismissal rather than affirmance, why I have made this a concurring rather than a dissenting opinion.

JURISDICTION
Notice of appeal of a judgment which terminates the parent-child relationship, as an accelerated appeal, TEX. FAM.CODE ANN. §§ 109.002(a), 263.405(a) (Vernon 2002 & Supp.2006), must be given within 20 days of the date of the judgment. TEX.R.APP. P. 26.1(b). While a late filed notice implies a motion for extension of time, Verburgt v. Dorner, 959 S.W.2d 615, 616-617 (Tex. 1997), a reasonable explanation for the late filing must still be provided. Id.; In the Interest of B.G., 104 S.W.3d 565, 567 (Tex. App.-Waco 2002, no pet.) (reasonable explanation given); see In the Interest of K.A.J., No. 10-07-00110-CV, 2007 WL 1704815, *1, 2007 Tex.App. LEXIS 4629, * 1-2 (Tex.App.-Waco June 13, 2007, no pet.) (mem. op.) (no reasonable explanation given; appeal dismissed); In the Interest of A.L.B., 56 S.W.3d 651, 652 (Tex.App.-Waco 2001, no pet.) (same).
In this appeal, the notice was filed late but, because it was filed within 15 days of the due date, a motion for extension was properly implied. The explanation provided for the late filing is that the attorney was not advised of the client's desire to appeal until the date the notice was filed, whereupon the notice was immediately prepared and filed. I do not find this explanation a reasonable explanation for late filing.[1]
The purpose of the deadline is to require a decision regarding appeal and pursuit of it within the time period provided. The extension is not to allow more time to make the decision. If some event had occurred which had delayed the making of the decision, the communication of the decision to the attorney, or the attorney's preparation and filing of the notice of appeal, a description of that event may suffice as a reasonable explanation. But we have none of that. All we have is that the notice of appeal was filed on the date the decision to appeal was communicated to the attorney. That date was late for the filing of the notice of appeal. Accordingly, I would dismiss this appeal because the late notice of appeal does not invoke our appellate jurisdiction.[2]

*401 MY VOTE AND TIRE JUDGMENT
If we have jurisdiction, and we do not, if we considered her due process issue, which we could if we had jurisdiction, and if we sustained her due process issue, which we should not, we would then have to decide the merits of her sole issue which is: the trial court erred in failing to extend the final disposition date for 180 days (so that she could have yet another six months in which to bring herself into compliance with the service plans which she had failed to do during the twelve months prior to the requested extension). Neither Justice Vance nor Justice Reyna discuss this issue. Because of the split between the three justices on the proper disposition of the appeal, Justice Vance could proceed with the analysis of the, merits of the issue. He may decide, as I have, that the issue should be overruled. If he did, he could conclude that the judgment should be affirmed, thus casting-the second direct vote for an affirmance, albeit for an entirely different reason than Justice Reyna.
And there is nothing, however, to be achieved by further delay in this already tardy disposition of a termination proceeding by me conducting a full-blown discussion and analysis of the argument and authorities cited by the parties. It is sufficient to state that, after careful consideration of the issue, as ably presented and argued in the briefs of the parties, I would overrule the sole issue and affirm the trial court's judgmentif I ever reached this point in the analysis.
Because I have determined we have no jurisdiction for the reasons stated, I would dismiss this proceeding But because there would be no majority to vote for a judgment if I voted to dismiss, Justice Vance votes to reverse, and Justice Reyna votes to affirm; and further because the result of a dismissal is functionally equivalent to a judgment of affirmance because the trial court's judgment remains undisturbed, to facilitate the disposition of this appeal as quickly as possible so as to bring certainty to the lives of these two young children, I concur in the judgment which affirms the trial court's judgment terminating the parental rights.
FELIPE REYNA, Justice, concurring.
Rhonda Moncrief contends in her sole issue that the court abused its discretion by refusing her request for a 180-day extension under section 263.401(b) of the Family Code. I concur in the judgment affirming the termination decree because Moncrief did not specifically present this issue to the trial court in a timely filed statement of points. See Tn. FAM.CODE ANN. § 263.405(b), (i) (Vernon Supp.2006). Thus, she has not properly preserved this issue for appellate review. Id. § 263.405(i); In re J.W.H., 222 S.W.3d 661, 662 (Tex.App.-Waco 2007, no pet.); In re A.H.L., 214 S.W.3d 45, 54 (Tex.App.-El Paso 2006, pet. denied); In re C.M., 208 S.W.3d 89, 92 n. 3 (Tex.App.-Houston [14th Dist.] 2006, no pet.).
I disagree with the Chief Justice's concurring opinion because I believe Moncrief provided a reasonable explanation for the late filing of her notice of appeal. Under Verburgt v. Dorner, an extension motion is implied if a notice of appeal is filed within fifteen days after it was due. 959 S.W.2d 615, 617 (Tex.1997); see also Hone v. Hanafin, 104 S.W.3d 884, 886 (Tex.2003) (per curiam). Although the motion is implied, the appellant must also provide a reasonable *402 explanation for the late filing to avoid dismissal of the appeal. Jones v. City of Houston, 976 S.W.2d 676, 677 (Tex.1998); Doe v. Brazoria County Child Protective Servs., 226 S.W.3d 563, 571 (Tex.App.-Houston [1st Dist.] 2007, no pet.); In re B.G., 104 S.W.3d 565, 567 (Tex.App.-Waco 2002, order); see also Hone, 104 S.W.3d at 886-87.
In Hone, the Supreme Court discussed what it means for an appellant to provide a "reasonable explanation" in this context.
We first considered the meaning of "reasonably explain" in Meshwert v. Meshwert, 549 S.W.2d 383, 383-84 (Tex. 1977) (discussing Texas Rule of Civil Procedure 21cRule [of Appellate Procedure] 26.3's predecessor). We held that a reasonable explanation is "any plausible statement of circumstances indicating that failure to file within the [specified] period was not deliberate or intentional, but was the result of inadvertence, mistake or mischance." Id. at 384. In Garcia v. Kastner Farms, Inc., we applied the Meshwert standard to all cases in which an appellant fails to file a notice of appeal timely. 774 S.W.2d [668] at 669-70 [(Tex.1989)]. We explained that, "[w]hile the definition of reasonable explanation is settled, the courts of appeals have not applied the definition consistently." at 669-70. We emphasized that, under the liberal standard of review applied in these cases, "[a]ny conduct short of deliberate or intentional noncompliance qualifies as inadvertence, mistake or mischance. . . ." Id. at 670.
Hone, 104 S.W.3d at 886-87 (some citations omitted); accord Doe, 226 S.W.3d at 571; B.G., 104 S.W.3d at 567.
Here, in response to a notice from the Clerk of this Court, Monerief's appellate counsel provided the following explanation for her untimely notice of appeal:
Moncrief did not inform trial counsel . . . of her desire to appeal, until Friday afternoon, December 8, 2006. [Trial counsel] immediately drafted a Notice of Appeal and filed it that same day, and moved the trial court that same day to appoint appellate counsel. Thus, the reason for the delay in filing the Notice was the fact that the Respondent did not inform trial counsel to appeal until December 8, 2006. It is not unusual for a party to not understand the importance of deadlines in legal proceedings. Once trial counsel became aware that an appeal was desired, he filed for it at once, still within the extension period. (citations to record omitted)
Moncrief's court-appointed trial counsel filed the notice of appeal eleven days after it was due and contemporaneously with a motion to withdraw because he does "not handle appeals." However, appellate counsel was not appointed until after the deadline for filing an extension motion.
From trial counsel's letter to the trial court explaining the reasons for the withdrawal, it appears that trial counsel did not understand the applicable deadlines for perfecting such an appeal. Under these circumstances, Moncrief's explanation constitutes a "plausible statement of circumstances indicating that failure to file within the [specified] period was not deliberate or intentional, but was the result of inadvertence, mistake or mischance." See Hone, 104 S.W.3d at 886 (quoting Meshwert, 549 S.W.2d at 384); Doe, 226 S.W.3d at 571 (same); accord B.G., 104 S.W.3d at 567. Thus, I believe Moncrief has provided a reasonable explanation for the late filing of her notice of appeal.
I disagree with the dissenting opinion because Moncrief has not briefed the issue of whether section 263.405 violates her right to due process. Instead, she very briefly touched on this subject in her response *403 to a dismissal notice sent by the Clerk of this Court: Specifically, Moncrief contended in this-response that it would be a denial of due process to fault her for failing to file a statement of points under these circumstances and that this Court can address matters of fundamental error regardless of whether a statement of points has been filed. I address these contentions in reverse order.
Except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties. See In the Interest of B.L.D., 113 S.W.3d 340, 350-52 (Tex.2003). We have described fundamental error as those instances in which error directly and adversely affects the interest of the public generally, as that interest is declared by the statutes or Constitution of our State, or instances in which the record affirmatively and conclusively shows that the court rendering the judgment was without jurisdiction of the subject matter. See McCauley v. Consols Underwriters, 157 Tex. 475, 304 S.W.2d 265, 266 (1957).
Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 577 (Tex.2006).
The "civil doctrine of fundamental error is a creature of common law." B.L.D., 113 S.W.3d at 351 n. 10. As such, it may be rejected by the Legislature. See, e.g., Durham Transp. Co. v. Beettner, 201 S.W.3d 859, 874 (Tex.App.-Waco 2006, pet. denied) (discussing how "the Legislature effectively overruled" Texas cases holding that prejudgment interest was recoverable on future damages).
The Legislature has apparently concluded that the common-law doctrine of fundamental error has no application in cases governed by section 263.405. See In re E.A.R., 201 S.W.3d 813, 814-15 & n. 2 (Tex.App.-Waco 2006, no pet.) (Vance, J., concurring) (observing that the, 79th Legislature enacted section 263.405(i) because of appellate courts' refusal to recognize that the statement of points required by subsection (b) of that statute [enacted by the 77th Legislature] was a procedural prerequisite for the presentation of issues on appeal). As the bill analysis states, "HB 409 conclusively establishes that the Legislature expects litigants to comply with Section 263.405(b) of the Family Code." Id. at 815 n. 2 (quoting HOUSE COMM. ON JUVENILE JUSTICE & FAMILY ISSUES, BILL ANALYSIS, Tex. H.B. 409, 79th Leg., R.S. (2005)). In light of this statement of purpose and the plain language of section 263.405(i), it is my view that the common-law doctrine of fundamental error does not apply ih cases governed by section 263.405.
Moncrief also contended in her response that any insistence on compliance with section 263.405(b) under the unique circumstances of her case operates to deprive her of due process. However, she did not raise this issue in her brief. It is wellsettled that this Court cannot address an issue in a civil appeal which has not been raised as an issue or point of error in the appealing party's brief. See Pat Baker Co. v. Wilson, 971 S.W.2d 447, 450 (Tex.1998) (per curiam); French v. Gill, 206 S.W.3d 737, 743 (Tex.App.-Texarkana 2006, no pet.); Dawsan v. Briggs, 107 S.W.3d 739, 744, (Tex.App.-Fort Worth 2003, no pet.); but sec. Pena v. State, 191 S.W,3d 133, 136 (Tex.Crim.App.2006) ("appellate courts are free to review `unassigned error'" in criminal appeals). Accordingly, absent properly assigned error, this Court cannot address the question of whether section 263.405(i) violates Moncrief's right to due process.
Raising the, issue of due process in a response is not the same as briefing the issue. Prudent appellate counsel should always address preservation with respect to any issue presented for appellate review, even if this is done in a single sentence *404 with an appropriate citation to the record (e.g., "This issue was preserved by appellant's timely filed statement of points. II C.R. at 100."). See Walder v. State, 85 S.W.3d 824, 827 (Tex.App.-Waco 2002, order) (per curiam) (in argument portion of brief, "counsel should explain how the issue or point presented has been preserved for appellate review . . . with appropriate citations to authorities and to the record'"). Or, as this Court said in Walder, "counsel should explain . . . why no preservation is required." Id.
Here, Moncrief failed to preserve her complaint because she did not file a statement of points. Under these circumstances, her appellate counsel should have acknowledged this failure (particularly in view of the notice sent by the Clerk of this Court which expressly referenced this failure) and briefed the issue of why Moncrief should be excused from compliance with section 263.405. Such briefing would ostensibly present argument and authorities to support the due process complaint on which the dissent relies. Presenting this issue in the appellant's brief would also presumably lead the Department to respond in the appellee's brief with argument and authorities to demonstrate why there is no due process violation. The issue would be fully joined, and it would then be appropriate for this. Court to evaluate the merits of such a complaint. However, Moncrief did not brief this issue. Therefore, I believe that this Court should not address any potential violation of her right to due process. See Pat Baker Co., 971 S.W.2d at 450; French, 206 S.W.3d at 743; Dawson, 107 S.W.3d at 744.
Because Moncrief failed to properly preserve her complaint, I concur in the judgment of affirmance.
BILL VANCE, Justice, dissenting.
The Clerk's January 5, 2007 letter to Moncrief notified her that her appeal would be dismissed unless she filed a timely response showing grounds for continuing the appeal without a statement of points. On January 16, Moncrief filed a timely response that I believe shows a meritorious groundan otherwise violation of due processfor continuing the appeal. Because of that belief, and because I do not believe that Moncrief was required to have made her due process argument in her February 5 appellant's brief, I respectfully dissent to affirming the trial court's termination order.
Specifically, the Clerk's letter requested a "brief or other response showing grounds for continuing the appeal without the required statement of points." Moncrief did exactly what the Clerk requested; she filed what is fairly termed a "letter brief' and made her arguments for continuing the appeal. Next, there is no precedent for requiring that Moneriefs due process argument be raised in her appellant's brief. We routinely request responses from parties to show grounds for continuing appeals, and I am not aware of any instance where we have refused to address a party's response because it was not also raised in an appellant's brief.
Furthermore, issues in an appeal are raised to direct our attention to error in the trial court on which an appellant bases her complaint. See TEX.R.App. P. 38.1(e). A complaint on appeal must address specific trial court errors. See Velasquez v. Waste Connections, Inc., 169 S.W.3d 432, 439 (Tex.App.-El Paso 2005, no pet.); McGuire v. McGuire, 4 S.W.3d 382, 385 (Tex.App.-Houston [1st Dist.] 1999, no pet.). At the time of the filing of her appellant's brief, Moncrief had no error to complain of regarding the prosecution of her appeal without a statement of points. Thus, I would address the due process argument raised in her response, or I *405 would grant leave for her to file a supplemental appellant's brief to raise her due process issue. See 10TH TEXAPP, (Waco) Loc. R. 12(f),
On the substance of Moncrief's due process argument, under the due process analysis set out and applied in In re K.L., 91 S.W.3d 1, 4-13 (Tex.App.-Fort Worth 2002, no pet.), I would hold that application of subsection 263.405(b)'s draconian fifteen-day time frame and subsection 263.405(i) to Moncrief violates due process and allow her to continue this appeal without a statement of points.[1] Slightly over a year ago, I wrote on this issue:
I thus question whether subsection 263.405(i), as applied to, certain termination cases-especially those cases involving indigent parents whose appointed appellate counsel is not the same as appointed trial counsel-passes constitutional muster because it can operate to deprive appellate review of any issues under its accelerated timetable.
. . .
In the Tenth Court of Appeals, it is not unusual for appointed appellate counsel to be different from appointed trial counsel in termination appeals involving an indigent parent. In those situations, if trial counsel does not file a statement of points, it is likely a practical impossibility for appointed appellate counsel to be able to file a statement of points within fifteen days after the termination order, as it is highly doubtful that the appellate record will have been prepared for appellate counsel to review to formulate a statement of points. And in some cases, appellate counsel is not even appointed within fifteen days after the termination order, and unless appointed trial counsel has already filed a statement of points, its timely filing is factually impossible.
In re E.A.R., 201 S.W.3d 813, 816-17 (Tex. App.-Waco 2006, no pet.) (Vance, J., concurring) (footnotes and citations omitted).[2]
Moncrief's situation fits the trap that I predicted would ensnare appointed appellate counsel-and, of course, the appellant *406 parentin an indigent-parent case. See id. at 817 n. 6. Her appointed trial counsel withdrew soon after filing her notice of appeal, and her appellate counsel was not appointed until twenty-one days after the deadline for filing the statement of points. In this situation, precluding Moncrief's appeal by applying subsections 263.405(b) and 263.405(i) cannot comport with due process. I therefore respectfully dissent to the affirmance of the trial court's termination order.

OPINION ON REHEARING
FELIPE REYNA, Justice.
Appellant Rhonda Moncrief has filed a motion for rehearing requesting, among other things, leave to file a supplemental brief addressing whether subsections 263.405(b) and 263.405(i) as applied to her case violate her right to due process. A majority of the justices granted this request and directed the parties to file supplemental briefs on this issue. See 10TH TEX.APP. (Waco) Loc. R. 12(f); see also TEx.R.App. P. 38.7. We will grant Moncriers motion for rehearing in part, address the merits of the sole issue presented in her appellant's brief, and affirm the judgment.

TIMELINESS OF APPEAL[1]
Moncrief's court-appointed trial counsel filed the notice of appeal eleven days after it was due and contemporaneously with a motion to withdraw because he does "not handle appeals." However, appellate counsel was not appointed until after the deadline for filing an extension motion.
Under Verburgt v. Dorner, an extension motion is implied if a notice of appeal is filed within fifteen days after it was due. 959 S.W.2d 615, 617 (Tex.1997); see also Hone v. Hanafin, 104 S.W.3d 884, 886 (Tex.2003) (per curiam). Although the motion is implied, the appellant must also provide a reasonable explanation for the late filing to avoid dismissal of the appeal. Jones v. City of Houston, 976 S.W.2d 676, 677 (Tex.1998); Doe v. Brazoria County Child Protective Servs., 226 S.W.3d 563, 571 (Tex.App.-Houston [1st Dist.] 2007, no pet.); In re B.G., 104 S.W.3d 565, 567 (Tex.App.-Waco 2002, order, no pet.) (per curiam); see also Hone, 104 S.W.3d at 886-87.
In Hone, the Supreme Court discussed what it means for an appellant to provide a "reasonable explanation" in this context.
We first considered the meaning of "reasonably explain" in Meshwert v. Meshwert, 549 S.W.2d 383, 383-84 (Tex. 1977) (discussing Texas Rule of Civil Procedure 21cRule [of Appellate Procedure] 26.3's predecessor). We held that a reasonable explanation is "any plausible statement of circumstances indicating that failure to file within the [specified] period was not deliberate or intentional, but was the result of inadvertence, mistake or mischance." Id. at 384. In Garcia v. Kastner Farms, Inc., we applied the Meshwert standard to all cases in which an appellant fails to file a notice of appeal timely. 774 S.W.2d at 669-70. We explained that, "[w]hile the definition of reasonable explanation is settled, the courts of appeals have not applied the definition consistently." Id. at 669-70. We emphasized that, under *407 the liberal standard of review applied in these cases, lajny conduct short of deliberate or intentional noncompliance qualifies as inadvertence, mistake or mischance. . . ." Id. at 670.
Hone, 104 S.W.3d at 886-87 (some citations omitted); accord Doe, 226 S.W.3d at 571; B.G., 104. S.W.3d at 567.
Here, in response to a notice from the Clerk of this Court, Moncrief's appellate counsel provided the following explanation for her untimely notice of appeal:
Moncrief did not inform trial counsel . . . of her desire to appeal until Friday afternoon, December 8, 2006. [Trial coun sel] immediately drafted a Notice of Appeal and filed it that same day, and moved the trial court that same day to appoint appellate counsel. Thus, the reason for the delay in filing the Notice was the fact that the Respondent did not inform trial counsel to appeal until December 8, 2006. It is not unusual for a party to not understand the importance of deadlines in legal proceedings. Once trial counsel became aware that an appeal was desired, he filed for it at once, still within the extension period. (citations to record omitted)
This Court and others have held that an attorney's misunderstanding of the relevant deadlines to perfect an appeal under section 263.405 constitutes a reasonable explanation for the late filing of a notice of appeal. See Doe, 226 S.W.3d at 571; B.G., 104 S.W.3d at 567.
Under the circumstances, Moncrief's explanation constitutes a "plausible statement of circumstances indicating that failure to file within the [specified] period was not deliberate or intentional, but was the result of inadvertence, mistake or mischance." See Hone, 104 S.W.3d at 886 (quoting Meshwert, 549 S.W.2d at 384); Doe, 226 S.W.3d at 571 (same); accord B.G., 104 S.W.3d at 567. Therefore, because Moncrief has provided a reasonable explanation for the late filing of her notice of appeal, we grant the implied motion for extension and hold that her appeal was timely perfected.

DUE PROCESS
Moncrief contends in her supplemental issue that application of subsections 263.405(b) and 263.405(i) to her case violates her right to due process.
Section 263.405 applies to appeals from final orders rendered in parental-rights termination suits instituted by the Department of Family and Protective Services. See TEX. FAM.CODE ANN. § 263.401(a) (Vernon Supp.2007) (addressing final order in termination suit "filed by the department"); § 263.405(a) (Vernon Supp.2007) (addressing "appeal of a final order rendered under this subchapter");[2]In re J.R.S., 232 S.W.3d 278, 281 (Tex.App.-Fort Worth 2007, no pet.). Section 263.405 imposes strict deadlines and establishes a unique procedure for the trial court to determine whether: (1) a new trial should be granted; (2) an indigence claim should be sustained; and (3) the appeal is frivolous under section 13.003(b) of the Civil Practice and Remedies Code. See TEX.FAM. CODE ANN. § 263.405 (Vernon Supp.2007).
The version of subsection (b) applicable to' Moncriefs appeal provides:
Not later than the 15th day after the date a final order is signed by the trial judge, a party intending to appeal the order must file with the trial court a statement of the point or points on *408 which the party intends to appeal. The statement may be combined with a motion for a new trial.
Act of May 22, 2001, 77th Leg., R.S., ch. 1090, 9, 2001 Tex. Gen. Laws 2395, 2397-98 (amended 2007) (current version at TEX. FAM.CODE ANN, § 263.405(b), (b-1)).[3]
Subsection (i) then provides in pertinent part, "The appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal or in a statement combined with a motion for new trial." TEX. FAM.CODE ANN. § 263.405(i).
Here, Moncrief did not file a notice of appeal until thirty-two days after the judgment was signed.[4] Her trial attorney withdrew from the representation contemporaneously with the filing of the notice of appeal. The court appointed appellate counsel four days later, which was twentyone days after a statement of points would have been due.[5] Thus, no statement of points was ever filed on Moncrief's behalf.

Procedural Due Process
It is beyond peradventure that parental-rights termination proceedings must comply with the requisites of procedural due process. In re B.L.D., 113 S.W.3d 340, 351-52 (Tex.2003); see also M.L.B. v. S.L.J., 519 U.S. 102, 116, 117 S.Ct. 555, 564, 136 L.Ed.2d 473 (1996); Santosky v. Kramer, 455 U.S. 745, 753-54, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599 (1982). At a minimum, procedural due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. City of Los Angeles v. David, 538 U.S. 715, 717, 123 S.Ct. 1895, 1896, 155 L.Ed.2d 946 (2003) (per curiam) (citing Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)); Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex., 136 S.W.3d 643, 658 (Tex.2004); see also Hamdi v. Rumsfeld, 542 U.S. 507, 533, 124 S.Ct. 2633, 2648-49, 159 L.Ed.2d 578 (2004) (plurality opinion).
We consider three factors to determine whether application of the challenged statute to Moncriefs appeal deprives her of that process which is due:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Mathews, 424 U.S. at 334-35, 96 S.Ct. at 903; accord Hamdi, 542 U.S. at 529, 124 S.Ct. at 2646; David, 538 U.S. at 716, 123 S.Ct. at 1896; B.L.D., 113 S.W.3d at 352; In re S.K.A., 236 S.W.3d 875, 892 (Tex. App.-Texarkana 2007, no pet. h.); see also M.L.B., 519 U.S. at 120-21, 117 S.Ct. at 566 ("we inspect the character and intensity *409 of the individual interest at "stake, on the one hand; and the State's justification for its exaction oh the other").
In applying the Mathews factors to determine a due process claim, the Supreme Court of Texas has suggested that those factors should be balanced against the presumption of constitutionality which courts must accord legislative enactments. B.L.D., 113 S.W.3d at 352-54. However, from relevant jurisprudence of the United States Supreme Court, it appears that this presumption of constitutionality may be incorporated into the third of the Mathews factors, namely, the governmental interest at stake. See Walters v. Nat'l Ass'n of Radiation Survivors, 473 U.S. 305, 319-26, 105 S.Ct. 3180, 3188-92, 87 L.Ed.2d 220 (1985); Mathews, 424 U.S. at 349, 96 S.Ct. at 909.

Private Interests
The United States Supreme Court has most eloquently stated the nature of the private interest at stake for the parent in parental-rights termination cases.
This Court's decisions have by now made plain beyond the need for multiple citation that a parent's desire for and right to "the companionship, care, custody and management of his or her children" is an important interest that "undeniably warrants deference and, absent a powerful countervailing interest, protection." Here the State has sought not simply to infringe upon that interest but to end it. If the State prevails, it will have worked a unique kind of deprivation. A parent's interest in the accuracy and [justice][6] of the decision to terminate his or her parental status is, therefore a commanding one.
Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 27, 101 S.Ct. 2153, 2159-60, 68 L.Ed.2d 640 (1981) (footnote added) (citations omitted); accord B.L.D., 113 S.W.3d at 352; S.K.A., 236 S.W.3d at 888-89, 892-93.
The child also has a compelling interest. "[U]ntil the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship."[7]Santosky, 455 U.S. at 760, 102 S.Ct. at 1398; accord In re M.S., 115 S.W.3d 534, 547-48 (Tex.2003); S.K.A., 236 S.W.3d at 892-93.

Risk of Erroneous Deprivation
Next, we consider "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335, 96 S.Ct. at 903; accord Hamdi, 542 U.S. at 529, 124 S.Ct. at 2646; David, 538 U.S. at 716, 123 S.Ct. at 1896.
Under this particular component of the Mathews balancing test, we first consider the procedural' safeguards currently in place. See "Lassiter, 452 U.S. at 28-29, 101 S.Ct. at 2160; B.L.D., 113 S.W.3d at 353; S.K.A., 236 S.W.3d at 893-94. The *410 Texas Supreme Court has catalogued many of the extant procedural safeguards in parental-rights termination cases. See B.L.D., 113 S.W.3d at 353-54. Most of the safeguards identified in B.L.D. are applicable to only the trial. But the risk of deprivation here is that Moncrief's parental rights will have been judicially terminated without meaningful appellate review. Therefore, we focus on the procedural safeguards in place to ensure meaningful appellate review.
First, we observe that Moncrief has no constitutional right to appellate review at all. See M.L.B., 519 U.S. at 110, 117 S.Ct. at 560; Ross v. Moffitt, 417 U.S. 600, 611, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974); S.K.A., 236 S.W.3d at 889-90. Nevertheless, the Legislature has granted a right of appeal by statute. See TEX. FAM.CODE ANN. § 109.002(a) (Vernon 2002), § 263.405(a). And because the Legislature has done so, this statutory right of appeal must comport with the Due Process Clause. Evitts v. Lucey, 469 U.S. 387, 400-01, 105 S.Ct. 830, 838-39, 83 L.Ed.2d 821 (1985); S.K.A., 236 S.W.3d at 889-90; Tex. Dep't of Pub. Safety v. Story, 115 S.W.3d 588, 591 (Tex.App.-Waco 2003, no pet.); In re K.L., 91 S.W.3d 1, 5-6 & n. 16 (Tex.App.-Fort Worth 2002, no pet.); see also M.L.B., 519 U.S. at 110-11, 117 S.Ct. at 560-61 (once a state provides a right of appeal, "the State may not `bolt the door to equal justice'") (quoting Griffin v. Illinois, 351 U.S. 12, 24, 76 S.Ct. 585, 593, 100 L.Ed. 891 (1956) (Frankfurter, J., concurring)).
There are three primary safeguards attendant to the appellate process in cases governed by section 263.405. The first two are for the indigent. Under section 263.405 and Rule of Appellate Procedure 20.1, an indigent appellant is permitted to pursue his or her appeal without advance payment of court costs or fees and to have the clerk's and reporter's records prepared and filed without prepayment. See TEX. FAM.CODE ANN. § 263.405; TEX. R.APP. P. 20.1. An indigent appellant also has a statutory right to appointed counsel, which includes the right to effective assistance. of counsel on appeal. See TEX. FAM. CODE ANN. § 263.405(e); M.S., 115 S.W.3d at 544; S.K.A., 236 S.W.3d at 890-91; K.L., 91 S.W.3d at 13; see also Evitts, 469 U.S. at 397, 105 S.Ct. at 836-37 ("the promise of Douglas that a criminal defendant has a right to counsel on appeal-like the promise of Gideon that a criminal defendant has a right to counsel at trialwould be a futile gesture unless it comprehended the right to the effective assistance of counsel"). Finally, the Texas Supreme Court has determined that a heightened standard of review applies to any complaint that there is no evidence or factually insufficient evidence to support the findings necessary for termination. B.L.D., 113 S.W.3d at 354 (citing In re J.F.C., 96 S.W.3d 256, 265-66 (Tex.2002); In re C.H., 89 S.W.3d 17, 25 (Tex.2002)).
These are the existing safeguards, yet Mathews counsels that we also consider "the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335, 96 S.Ct. at 903; accord Hamdi, 542 U.S. at 529, 124 S.Ct. at 2646; David, 538 U.S. at 716, 123 S.Ct. at 1896. Of the existing safeguards, only the right to effective assistance of counsel bears on the risk of deprivation faced by Moncrief.
The Dallas Court has ventured to identify additional safeguards which would serve to level the playing field for appeals governed by section 263.405.
The appellate playing field needs to be fair. As the family code currently " stands, parents are at a severe disadvantage in knowing all the requirements for an appeal.
*411 It is interesting to note that the family code contains, a section titled "Warning to Parents." See TEX. FAM.CODE ANN. § 263.006 (Vernon 2002). That section provides as follows:
At the status hearing under Subchapter C and at each permanency hearing under Subchapter D held after the court has rendered a temporary order appointing the department as temporary managing conservator, the court shall inform each parent in open court that parental and custodial rights and duties may be subject to restriction or to termination unless the parent or parents are willing and able to provide the child with a safe environment.
TEX. FAM.CODE ANN. § 263.006 (Vernon 2002). Through this section, the legislature ensures that parents are warned repeatedly before their case gets to trial that their parental rights may be terminated.
Although desperately needed, a further warning regarding parents' rights to appeal the termination of their rights is absent. The legislature should warn parents that if they fail to present the trial court with a statement of points within fifteen days of a final order, there will be nothing for the court of appeals to consider. This goal could most easily be accomplished by amending section 109.002(a) to direct attention to the appeal requirements of section 263.405 in all suits involving TDFPS. Additionally, the trial court can alert the parents to the appeal provisions of section 263.405 in a statement in capital letters and bold print at the end of its final order or judgment. By failing to file the statement of points, parents are, losing their right to appeal the termination of their parental rights. It appears that the failure to file the statement of points is most often not intentional but rather, it is the result of the failure of the family code to direct parents' attention to the provision. As it stands right now, section 463.405(b) is a trap for the unwary.
In re R.J.S., 219 S.W.3d 623, 627 (Tex. App.-Dallas 2007, pet. denied).
With respect to the Dallas Court's observation that parents ought to have specific notice that nothing can be reviewed on appeal absent a timely-filed statement of points, we observe that the Court of Criminal. Appeals has recently amended Rule of Appellate Procedure 25.2 by, among other things, adding subsection (h) which provides, "When a court enters a judgment or other appealable order and the defendant has a right of appeal, the court (orally or in writing) shall advise the defendant of his right of appeal and of the requirements for timely filing a sufficient notice of appeal." TEX.R.APP. P. 25.2(h) (emphasis added).[8] Thus, it is quite feasible for the Legislature to amend section 263.405 to include a similar notice requirement advising a parent in particular of the necessity of a timely-filed statement of points for appellate review.
In addition, we note that extensions may be obtained in a parental-rights termination appeal, for the filing of the notice of appeal, an indigence affidavit, the record, and briefs. See TEX. FAM.CODE ANN. § 263.405(h); TEX.R.App. P. 10.5, 26.3, 35.3(c), 38.6(d); Higgins v. Randall County. Sheriff's Office, 193 S.W.3d 898, 899-900 (Tex.2006) (per curiam) (indigence affidavit)" Doe, 226 S.W.3d at 570-71 (notice of appeal); see also In re K.A.F., 160 S.W.3d 923, 927 (Tex.2005) ("in an accelerated appeal, absent a rule 26.3 motion, the deadline *412 for filing a notice of appeal is strictly set at twenty days after the judgment is signed, with no exceptions"); but see In re M.A., 222 S.W.3d 670, 670-71 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (per curiam) (Higgins rule allowing "untimely" indigence affidavits does not apply to appeals governed by section 263.405). Stated another way, every deadline applicable to parental-rights termination appeals may be extended except the 15-day deadline established for the statement of points by section 263.405(b). Thus, it is quite feasible for the Legislature to amend section 263.405 to permit such an extension.
To summarize, there are few procedural safeguards presently in place to ensure against the risk that Moncriefs parental rights will have been judicially terminated without meaningful appellate review. We have identified two additional safeguards which would greatly reduce that risk.

The State's Interest
The State's interests in parental-rights termination proceedings are well documented. The paramount interest for the State is the best interest of the child.[9]See TEX. FAM.CODE ANN. § 153.002 (Vernon 2002); Santosky, 455 U.S. at 766-67, 102 S.W.3d at 1401-02; B.L.D., 113 S.W.3d at 353. Because of the shared interest in the welfare of the child, the State too has an interest in an accurate and;just determination. See Santosky, 455 U.S. at 766, 102 S.Ct. at 1401; B.L.D., 113 S.W.3d at 353; S.K.A., 236 S.W.3d at 892-93.
The State has other interests which do not necessarily coincide with a parent. The State "has an interest in the consistent and uniform application of preservation of error rules." M.S., 115 S.W.3d at 548; accord S.K.A., 236 S.W.3d at 892-93. This interest necessarily impacts all trials, civil and criminal. In addition, the State "has an interest in the economical and efficient resolution of parental-rights termination cases." Id. This interest is of such importance that the Legislature has carefully crafted time limits which apply to nearly every stage of litigation when the Department removes a child from the home because of abuse or neglect allegations.[10]See. B.L.D., 113 S.W.3d at 353. In particular, appellate review in such cases is accelerated and prioritized "over all other civil cases." See TEX. FAM.CODE ANN. § 109.002(a), § 263.405(a); B.L.D., 113 S.W.3d at 353; S.K.A., 236 S.W.3d at 892-93.

*413 Balancing the Factors
It is beyond question that a parent has a compelling interest in the accuracy and justness of a judicial decision to terminate his or her parental rights and, in particular, in obtaining meaningful appellate review of that decision. Here, meaningful appellate review is lost because of the 15-day statutory deadline for filing the statement of points necessary to preserve an issue for appellate review. This deprivation is magnified in Moncriefs case because appellate counsel was not appointed until after this deadline had passed. To assuage the risk of such deprivation, we have identified two relatively innocuous amendments which could be implemented without substantial intrusion on any of the State's interests we have identified.
In a similar case, the Texas Supreme Court has concluded that application of the general rules for preservation of error in civil cases does not violate due process. B.L.D., 113 S.W.3d at 354. However, the Court acknowledged "that in a given parental rights termination case, a different calibration of the [Mathews] factors could require a court of appeals to review an unpreserved complaint of error to ensure that our procedures comport with due process." Id. We believe Moncrief's appeal provides "a different calibration" of the relevant factors.
First, in B.L.D. the Supreme Court was considering whether application of longstanding principles of error preservation violates due process. See id., 113 S.W.3d at 349. The general principle that trial errors must be preserved by timely and specific objection has been a part of Texas jurisprudence for more than a century. See, e.g., Saenz v. O.F. Mumme & Co., 85 S.W. 59, 60 (Tex.Civ.App.-San Antonio 1905, no writ); see also Maverick v. Maury, 79 Tex. 435, 15 S.W. 686, 689 (1891) (discussing party's failure to preserve charge error). By contrast, the mandatory nature of the 15-day deadline for the statement of points had been established by the Legislature only about one year before Moncriefs case went to trial.[11]See In re E.A.R., 201 S.W.3d 813, 814-15 (Tex. App.-Waco 2006, no pet.) (Vance, J., concurring). And from the number of reported cases in which counsel failed to preserve appellate issues by timely filed statement of points, it would seem that a significant risk remains that parents will be deprived of meaningful appellate review. See, e.g., S.K.A., 236 S.W.3d at 883-85; In re M.D., No. 05-06-00779-CV, ___ S.W.3d ___, ___, 2007 WL 1310966, at *1 (Tex.App.-Dallas May 7, 2007, no pet.); In re R.C., No. 07-06-00444-CV, 243 S.W.3d 674, ___-___, 2007 WL 1219046, at *1-2 (Tex.App.-Amarillo Apr. 25, 2007, no pet.); In re J.H., No. 12-06-00002-CV, 2007 WL 172105, at *1 (Tex. App.-Tyler Jan.24, 2007, no pet.) (mem. op.); Adams v. Tex. Dep't of Family & Protective. Servs., 236 S.W.3d 271, 278 (Tex.App.-Houston [1st Dist.] 2007, no pet.); In re M.N., 230 S.W.3d 248, 249-50 (Tex.App.-Eastland 2007, pet. filed); In re T.R.F., 230 S.W.3d 263, 263-65 (Tex.App.-Waco 2007, pet. filed); In re T.T., 228 S.W.3d 312, 316-17 (TexApp.-Houston [14th Dist.] 2007, pet. denied); Pool v. Tex. Dep't of Family & Protective Servs., 227 S.W.3d 212, 215 (Tex.App.-Houston [1st Dist.] 2007, no pet.); In re C.B.M., 225 S.W.3d 703, 706 (Tex.App.-El Paso 2006, no pet.); In re J.W.H., 222 S.W.3d *414 661, 662 (Tex.App.-Waco 2007, no pet.); R.J.S., 219 S.W.3d at 626-27; In re R.M.R., 218 S.W.3d 863, 864 (Tex.App.-Corpus Christi 2007, no pet.); In re A.H.L., 214 S.W.3d 45, 53 (Tex.App.-El Paso 2006, pet. denied); In re C.M., 208 S.W.3d 89, 91-92 (Tex.App.-Houston [14th Dist.] 2006, no pet.); In re S.E., 203 S.W.3d 14, 15 (Tex.App.-San Antonio 2006, no pet.); E.A.R., 201 S.W.3d at 813-14; In re D.A.R., 201 S.W.3d 229, 230-31 (Tex. App.-Fort Worth 2006, no pet.); but see Doe, 226 S.W.3d at 571-76 (addressing ineffective assistance claim not raised in statement of points).
In Doe, the appellant presented as appellate issues an ineffective assistance complaint and a factual insufficiency complaint, neither of which had been raised in a statement of points. Doe, 226 S.W.3d at 570, 571, 576. The First Court of Appeals addressed the merits of the ineffective assistance complaint, reviewing in particular trial counsel's: (1) failure to make an opening statement, (2) failure to call certain witnesses, (3) decision to conduct only a brief direct examination of Doe, (4) failure to file a motion for new trial, and (5) failure to file a statement of points for appeal. Id. at 572-76. In connection with counsel's failure to file a motion for new trial, the court addressed the factual sufficiency of the evidence to support the jury's best-interest finding. Id. at 573-75.
Thus, Doe may be cited for the proposition that the risk of erroneous deprivation is not great because issues not raised in a timely filed statement of points may nevertheless be presented on appeal via an ineffective assistance claim. However, every other court which has addressed an ineffective assistance complaint under similar circumstances[12] has concluded that the merits of such a complaint may not be determined on appeal if the complaint was not presented to the trial court in a timely statement of points. See In re R.M., No. 04-07-00048-CV, ___ S.W.3d ___, ___, 2007 WL 1988149, at *1 (Tex.App.-San Antonio July 11, 2007, pet. denied); R.C., 243 S.W.3d at , 2007 WL 1219046, at *2; In re J.F.R., No. 09-06-00115-CV, 2007 WL 685640, at *2 (Tex.App.-Beaumont Mar.8, 2007, no pet.) (mem. op.); J.H., 2007 WL 172105, at *1; R.M.R., 218 S.W.3d at 864; A.H.L., 214 S.W.3d at 54; D.A.R., 201 S.W.3d at 229-31; see also T.R.F., 230 S.W.3d at 266 (Vance, J., concurring) (discussing "unpreserved" ineffective assistance complaints). Under these circumstances, the risk of erroneous deprivation remains "significant" and thus "unacceptable." See M.S., 115 S.W.3d at 549; S.K.A., 236 S.W.3d at 893-94.
Another distinction of Moncrief's appeal which provides "a different calibration" of the relevant factors is the fact that Moncrief's appellate counsel was not appointed until after the deadline for the statement of points. See S.K.A., 236 S.W.3d at 893-94 (finding due process violation where counsel not appointed until after deadline for statement of points). As Justice Vance has previously observed, "In the Tenth Court of Appeals, it is not unusual for appointed appellate counsel to be different from appointed trial counsel in termination appeals involving an indigent parent." E.A.R., 201 S.W.3d at 817 (Vance, J., concurring).[13]
*415 The State places full responsibility for failure to file a statement of, points on Moncrief. We are not persuaded. Under the law, Moncrief had an absolute entitlement to twenty days to determine whether she would appeal the decree terminating her parental rights. See TEX. FAM.CODE ANN. § 263.405(a); TEX.R.App. P. 26.1(b), The State observes that, if she had, informed trial counsel on the date of judgment that she wanted to appeal, appellate counsel would likely have been appointed with sufficient time to prepare and file a statement of points. However, the deadline for filing an appeal is not the date of judgment, but twenty days later. In fact, that deadline may be extended an additional fifteen days if the party provides a reasonable explanation for the late filing. See TEX.R.APP. P. 10.5(b)(1)(C), 26.3.
There are innumerable factors a litigant may consider when deciding whether to pursue an appeal. It would be, as the State suggests, a natural parental reaction to demand an immediate appeal and seek reversal of the termination decree at the earliest possible opportunity. In our experience, however, parental-rights termination cases involve a host of social, economic, psychological, and sometimes criminological issues which render the decision to appeal anything but simple. And when the intricate deadlines of section 263.405 are superimposed on the already complicated decision of whether to appeal, deadlines are missed, sometimes without remedy.
For the foregoing reasons, we hold that subsections 263.405(b) and 263.405(i), as applied to Moncrief's case, violate her right to due process.

Remedy
The Texas Supreme Court has explained the remedy in such a case. As the Court stated in B.L.D., "we acknowledge that in a given parental rights termination case, a different calibration of the [Mathews] factors could require a court of appeals to review an unpreserved complaint of error to ensure that our procedures comport with due process." B.L.D., 113 S.W.3d at 354. Therefore, we will consider the merits of the sole issue Moncrief presented in her appellant's brief. See S.K.A., 236 S.W.3d at 893-94 (considering issues presented in untimely statement of points).

DENIAL OF EXTENSION
Moncrief contends in her first issue that the court abused its discretion by denying her motion for a 180-day extension under section 263.401(b).
The applicable version of section 263.401(b) provides in pertinent part:
The court may not retain the suit on the court's docket after the time described by Subsection (a) unless the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child.
Act of May 29, 2005, 79th Leg., R.S., ch. 268, § 1.40, 2005 Tex. Gen. Laws 621, 636 (amended 2007) (current version at TEX. FAM.CODE ANN. § 263.401(b) (Vernon Supp. 2007)).
The trial court set Moncrief's case for non jury trial on October 3, 2006, nearly two months before the dismissal date (November *416 27) mandated by section 263.401(a). See id. 263.401(a). On the date of trial, Moncrief asked the court for a 180-day extension. Moncrief's trial counsel explained that she had not been in communication with him for several months and had contacted him again only the afternoon before trial. Moncrief testified that she believed she had completed all the requirements of her service plan except parenting classes. She attributed her failure to communicate with counsel primarily to lack of transportation and no telephone. She also presented evidence that she was born with spina bifida, that she receives monthly disability payments because she is unable to work, and that she has an IQ of 62.
On cross-examination, the Department reminded Moncrief that her service plan required her, among other things, to attend weekly therapy sessions and weekly parenting classes. Moncrief also testified that she had not attended a court hearing regarding her case since February.[14]
Moncriefs mother testified that she would do what she could to help Moncrief with her transportation needs and to otherwise help her with the service plan tasks. On cross-examination and further questioning by the trial court, Moncriefs mother essentially testified that she had not offered much assistance to Moncrief up to that point because Moncrief had disappeared for an unspecified period of time, because she thought that Moncrief was fulfilling her responsibilities under the service plan, and because Moncrief had told her that she was taking care of these issues herself.
The trial court denied Moncriefs request for a 180-day extension, holding that she had failed to show "good cause" for that length of an extension, but the court did postpone the trial fer three weeks to allow Moncriefs counsermore time to prepare.
We review the decision to grant or deny an extension request under section 263.401(b) for an abuse of discretion. See In re J.A., No. 02-05-00454-CV, 2006 WL 3114434, at *9 (Tex.App.-Fort Worth Nov. 2; 2006, no pet.) (mem. op.); Shaw v. Tex. Dep't of Family & Protective Servs., No. 03-05-00682-CV, 2006 WL 2504460, at *8 (Tex.App.-Austin Aug. 31, 2006, pet. denied) (mem. op.).
Moncrief contends that the court abused its discretion because it used the wrong legal test for determining whether an extension should be granted. Although Moncrief is correct that the "good cause" test apparently employed by the court is not the test set forth in section 263.401(b), she offers no explanation as to how the court's ruling would have been any different if the trial court had made a finding regarding "extraordinary circumstances" as required by the statute.
A court does not abuse its discretion if it makes a correct ruling for the wrong reason. Tex. Workers' Comp. Comm'n v. Wausau Underwriters Ins., 127 S.W.3d 50, 58 (Tex.App.-Houston [1st Dist.] 2003, pet. denied); Hawthorne v. Guenther, 917 S.W.2d 924, 931 (Tex.App.-Beaumont 1996, writ denied). The Austin and San Antonio Courts have both concluded that evidence similar to that presented by Moncrief does not establish "extraordinary circumstances" justifying an extension under section 263.401(b). See Shaw, 2006 WL 2504460, at *8; In re A.S.J., No. 04-06-00051-CV, 2006 WL *417 1896335, at *2 (Tex.App.-San Antonio July 12, 2006, no pet.) (mem. op.). Thus, we cannot say that the court abused its discretion by denying Moncriefs extension request. See Tex. Workers' Comp. Comm'n, 127 S.W.3d at 58; Hawthorne, 917 S.W.2d at 931. Accordingly, we overrule the first issue.

Conclusion
Having directed the parties to provide supplemental briefing on the due process issue, we grant Moncriefs motion for rehearing in part. We have concluded that subsections 263.405(b) and 263.405(i), as applied to Moncriefs case, violate her right to due process. Nevertheless, having overruled the sole issue presented in Moncriefs appellant's brief, we affirm the judgment.
Chief Justice GRAY dissenting.
TOM GRAY, Chief Justice, dissenting on rehearing
The Concurring Opinion issued August 12, 2007 is withdrawn and this Dissenting Opinion On Rehearing is substituted in its place.
On August 15, 2007, the three members of this court, sitting as the panel, issued four opinions to dispose of this appeal. The Per Curiam Opinion, supported by two concurring opinions, affirmed the judgment of the trial court which ordered termination of the parental rights of the biological mother of D.M. and W.M. I was the author of one of the concurring opinions and Justice Reyna authored the other. Justice Vance authored a dissenting opinion.
In my concurring opinion I noted that I would vote to affirm the judgment only because it functionally reached the same result as a dismissal because we had no jurisdiction. And as I also previously stated, if I had voted to dismiss, Justice Reyna had voted to affirm, and Justice Vance had voted to reverse, there would have been no result supported by a majority vote. As I also pointed out in my concurring opinion, if Justice Vance would consider the merits of the due process argument and determine that it should be overruled (or if sustained, that the underlying issue should be overruled), he could then have cast the second direct vote to affirm the trial court judgment. Because he has now done that, I no longer need to modify my vote for the Court to reach a judgment in the proceeding supported by a majority of the vote. Accordingly I withdraw my concurring opinion issued August 12, 2007. I issue this dissenting opinion as my only opinion in this proceeding. The judgment of the court issued on August 12, 2007 is now supported by a majority vote, as it should have been before, by the votes of Justices Reyna and Vance. Indeed the only operative opinions in this proceeding are the Opinion On Rehearing and this Dissenting Opinion on Rehearing.

JURISDICTION
Notice of appeal of a judgment which terminates the parent-child relationship, as an accelerated appeal, TEX. FAM.CODE ANN. §§ 109.002(a); 263.405(a) (Vernon 2002 & Supp.2007), must be given within 20 days of the date of the judgment. TEX.R.APP. P. 26.1(b). Whiie'a late filed notice implies a motion for extension of time, Verburgt v. Dorner, 959' S.W.2d 615, 616-617 (Tex. 1997), a reasonable explanation for the late filing must still be provided. Id.; In the Interest of B.G., 104 S.W.3d 565, 567 (Tex. App.-Waco 2002, no pet.) (reasonable explanation given) see In the Interest of K.A.J., No. 10-07-00110-CV, 2007 Tex. App. LEXIS 4629, *1-2 (Tex.App.-Waco June 13, 2007, no pet.) (mem. op.) (no reasonable explanation given; appeal dismissed); In the Interest of. A.L.B., 56 *418 S.W.3d 651, 652 (Tex.App.-Waco 2001, no pet.) (same).
In this appeal, the notice was filed late but, because it was filed within 15 days of the due date, a motion for extension was properly implied. The explanation provided for the late filing is that the attorney was not advised of the client's desire to appeal until the date the notice was filed, whereupon the notice was immediately prepared and filed. The full text of the "explanation" is attached as an appendix. A close reading will disclose that the entire explanation, other than a generic reference about parties not generally understanding deadlines, a "problem" that is not at all common in my experience, is based on the date the client communicated the desire to appeal to the attorney, and does not in any way try to explain or account for why the decision to appeal was not made at an earlier date. I do not find this explanation a reasonable explanation for late filing.[1]
The purpose of the deadline is to require a decision regarding appeal and pursuit of it within the time period provided. The extension is not to simply allow more time to make the decision. If some event had occurred which had delayed the ability to make the decision, the communication of the decision to the attorney, or the attorney's preparation and filing, of the notice of appeal, a description of that event may suffice as a reasonable explanation. But we have none of that. All we have is that the notice of appeal was filed on the date the decision to appeal was communicated to the attorney. That date was late for the filing of the notice of appeal. Accordingly, I would dismiss this appeal because the late notice of appeal does not invoke our appellate jurisdiction.[2]
To accept the explanation given as reasonable is to give any party an extension of time in which to file the notice of appeal just because they are tardy in communicating their desire to appeal to their attorney. I cannot accept this as a reasonable explanation for the late filing. We have been provided no explanation of what the client thought or knew about her appellate rights. Because the strong presumption is that counsel was effective and there is nothing in this record to indicate otherwise, we should presume that trial counsel had communicated the client's appellate rights to her and communicated to her the deadlines and the effect of missing those deadlines. We have been provided no explanation *419 that would rebut the presumption or that would indicate the delay was anything other than deliberate or intentional noncompliance because we have no explanation of what went on as to anything in connection with this proceeding between the date of the judgment and the date the notice of appeal was filed. The majority's holding means that no matter what the party's trial attorney told the client, no matter what the trial court told the client, and no matter what the client might otherwise know or have been advised about the deadline, the delay is still reasonable because any'delay until the client communicates the decision to appeal to the attorney apparently does not have to be explained and the explanation that the notice of appeal was filed the day the client told the attorney to pursue an appeal is therefore reasonable.

MY VOTE AND THE JUDGMENT
If we have jurisdiction, and we do not, if we considered her due process issue, which we could if we had jurisdiction, and if we sustained her due process issue, which we should not, we would then have to decide the merits of her sole issue which is: the trial court erred in failing to extend the final disposition date for 180 days (so that she could have another six months in which to bring herself into compliance with the service plans which she had failed to do during the twelve months prior to the requested extension). And there is nothing, however, to be achieved by further delay in this already tardy disposition of a termination proceeding by me conducting a full-blown discussion and analysis of the argument and authorities cited by the parties and now by the majority. It is sufficient to state that, after careful consideration of the issue, as ably presented and argued in the briefs of the parties, I would overrule the sole issue and affirm the trial court's judgmentif I ever reached this point in the analysis.
Because I have determined we have no jurisdiction for the reasons stated, I would dismiss this proceeding. Because there is now, on rehearing, a majority to directly vote to affirm the judgment of the trial court, and I would vote to dismiss the proceeding because we have no jurisdiction, I can now properly record my vote as a dissent.

APPENDIX

LETTER IN RESPONSE TO THE COURT'S INQUIRY
January 15, 2007
Tenth Court of Appeals
Sharri Roessler, Clerk
McLennan County Courthouse
501 Washington Ave., Rm 415
Waco, Texas 76701
Re: In the Interest of D.M. and W.M., Children; 10-06-407-CV; XXXX-XXXX-X
Dear Ms. Roessler,
This letter is in response to the Tenth Court's letter to me dated January 5, 2007.
Background
The history of the present case with pertinent deadlines is:
11-7-06 Final Order of Termination signed (2 CR 248); Final Order filedmarked on 11-21-06 (2 CR 248)
11-22-06 deadline for filing Points of Appeal (Family Code sec. 263.405(b))
11-27-06 deadline for filing Notice of Appeal (TRAP 26.1(b))
12-8-06 trial-counsel informed of Respondent's desire to appeal (2 CR 256; copy attached)
12-8-06 Notice of Appeal filed-marked; request for appointment of appellate counsel (2 CR 254)

*420 12-12-06 end of 15-day extension period for filing Notice of Appeal (TRAP 26.3)
12-13-06 Order signed appointing Richard Ferguson as appellate counsel (2 CR 263); Order filed-marked on 12-15-06 (2 CR 263)
The Notice of Appeal was filed within the 15-day extension period. The Points of Appeal, however, were not filed.
Late-Filed Notice of Appeal
The Respondent/Appellant, biological mom Rhonda Moncrief, did not inform trial counsel, Galen Edwards, of her desire to appeal until Friday afternoon, December 8, 2006. 2 CR 256; copy attached. Mr. Edwards immediately drafted a Notice of Appeal and filed it that same day (2 CR 258), and moved the trial court that same day to appoint appellate counsel. 2 CR 256. Thus the reason for the delay in filing the Notice was the fact that the Respondent did not inform trial counsel to appeal until December 8, 2006. It is not unusual for a party to not understand the importance of deadlines in legal proceedings. Once trial counsel became aware that an appeal was desired, he filed for it at once, still within the extension period. Thus this delay is excusable.
Points of Appeal Not Filed.
As for the non-filing of the Points of Appeal, again, trial counsel was not informed of Respondent's desire to appeal until well after the deadline had expired. Trial counsel, who does not do appellate work (2 CR 256), immediately moved for the appointment of appellate counsel, but that did not occur until five days later. 2 CR 263. Appointed appellate counsel had no knowledge of the proceedings in the trial court on which to determine Points of Appeal, not to mention the fact that he was not appointed until" twenty-one days after the Points were supposed to be filed.
The Family Code apparently does not contemplate a set of circumstances like these. These circumstances make it a practical impossibility for the filing of the Points, and the statutory procedures deny the Respondent/Appellant due process, because she is denied the same appellate rights and opportunities as other litigants. This problem has been recognized by this Court, e.g., In the Interest of E.A.R., 201 S.W.3d 813 (Tex.App.-Waco 2006) (Vance, B. concurring).
In addition, and alternatively, Subsection 263.405(b) and (i) are not jurisdictional. See In the Interest of S.J.G., 124 S.W.3d 237, 240, 243 (Tex.App.-Fort Worth 2003). Rather, they operate more like preservation-of-complaint rules. Those rules, however, have exceptions for fundamental errors. In the Interest of J.F.C., 96 S.W.3d 256, 286 et seq. and n. 1 (Tex. 2002) (referencing numerous examples of fundamental error). Thus, in addition to the due process argument, any fundamental errors that occurred in the trial court are appealable even without their inclusion in Points of Appeal.
In summary, in the interest of due process, the necessity of filing of Points of Appeal in the present case should be waived. In addition, any fundamental errors should be allowed to be raised.
Sincerely,
/s/
Richard G. Ferguson
NOTES
[1] The client's late notice to her attorney of her desire to pursue the appeal is consistent with the apparent lack of interest in doing what was necessary to prevent the termination of her parental rights as disclosed by the record in this proceeding.
[2] On the merits of the due process argument discussed by Justice Vance, she does not prevail for the same reasons we have no jurisdiction. It was not that she did not have a procedure to use or an attorney to assist her. The reason no statement of points was timely completed was because a decision to challenge the trial court's judgment was not timely made or was not timely communicated to her attorney. She has not raised, identified, or presented any reason why she could not have decided to appeal, communicated that decision, and have had the statement of points prepared and filed within the 15 day period. Therefore, while her attorney and Justice Vance want to focus on what allegedly was wrong in the timing of the hand-off between the trial and appellate attorney, I would focus on the failure of the client to timely implement the process that was available and adequate, rather than hold that the process as applied was inadequate to meet minimum due process requirements.
[1] "Historically, the United States Supreme Court has, without dispute, recognized that state intervention to terminate the relationship between a parent and child must be accomplished by procedures meeting the requisites of the Due Process Clause." In re K.L., 91 S.W.3d 1, 5 & n. 12 (Tex.App.-Fort Worth 2002, no pet.) (citing Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982); Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 24-32, 101 S.Ct. 2153, 2158-62, 68 L.Ed.2d 640 (1981); Lassiter, 452 U.S. at 37, 101 S.Ct. at 2165, 68 L.Ed.2d 640 (Blackmun, J. dissenting); Lassiter, 452 U.S. at 59-60, 101 S.Ct. at 2176, 68 L.Ed.2d 640 (Stevens, J. dissenting)). And "although a constitutional right may not exist, once a state undertakes to grant individuals certain rights, those rights are entitled to constitutional protection. Thus, once a state chooses to act and grants rights to its citizens, such rights cannot be withdrawn without consideration of applicable due process norms." Id.
[2] Many of our sister courts have joined in questioning the due process implications of subsections 263.405(b) and 263,405(i). See In re R.M., ___ S.W.3d ___, ___, 2007 WL 1988149, *1 (Tex.App.-San Antonio July 11, 2007, no pet. h.); In re R.C., 243 S.W.3d 674, ___, 2007 WI 1219046, at *2 (Tex.App.-Amarillo 2007) (Quinn, C.J., concurring); In re R.M.R., 218 S.W.3d 863, 864 (Tex.App.-Corpus Christi 2007, no pet. h.); In re R.J.S., 219 S.W.3d 623, 626 (Tex.App.-Dallas 2007, pet. denied); Pool v. Tex. Dep't of Fam. & Prot. Servs., 227 S.W.3d 212, 215 (Tex.App.-Houston [1st Dist.] 2007, no pet. h.) (mem. op.); In re D.A.R., 201 S.W.3d 229, 230-31 (Tex.App.-Fort Worth 2006, no pet.); In re C.R., 2006 WL 3114468, at *1 (Tex.App.-Fort Worth Nov. 2, 2006, no pet. h.) (Livingston, J., concurring); In re S.E., 203 S.W.3d 14, 15 (Tex.App.-San Antonio 2006, no pet.); In re H.H.H., 2006 WL 2820063, at *1 n. 1 (Tex. App.-Texarkana Oct. 4, 2006, no pet.) (mem. op.).
[1] Because the timeliness of Moncrief's appeal was not addressed in an opinion joined by a majority of the justices on original submission, we begin with this issue because it concerns this Court's jurisdiction. See Wilkins v. Methodist Health Care Sys., 160 S.W.3d 559, 564 (Tex.2005) ("[b]ecause Wilkins's notice of appeal was untimely, the court of appeals lacked jurisdiction over the appeal").
[2] "[T]his subchapter" (i.e., Chapter 263, Subchapter E of the Family Code) consists of sections 263.401 through 263.408. See TEX. FAM.CODE ANN. §§ 263,401-.408 (Vernon 2002 & Supp.2007).
[3] The 2007 amendments apply to suits "filed on or after the effective date of this Act," which was June 16, 2007. Act of May 21, 2007, 80th Leg., R.S., ch. $26, §§ 6, 8, 2007 Tex. Sess. Law Serv. 931, 932.
[4] Because appeals under section 263.405 are accelerated, the notice of appeal ordinarily must be filed within twenty days after the judgment is signed. See TEX. FAM.CODE ANN. § 263.405(a) (Vernon Supp.2007); TEX.R.APP. P. 26.1(b). However, this deadline may be extended. See TEX.R.APP. P. 26.3; In re K.A.F., 160 S.W.3d 923, 926 (Tex.2005).
[5] Section 263.405 contains no provision authorizing an extension of time to file a statement of points.
[6] The Supreme Court in Lassiter actually referred to the "parent's interest in the accuracy and injustice of the decision to terminate." Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 27, 101 S.Ct. 2153, 2160, 68 L.Ed.2d 640 (1981) (emphasis added). Nevertheless, subsequent decisions (purportedly quoting Lassiter) refer to the "accuracy and justice" of the decision to terminate. See, e.g., M.L.B. v. S.L.J., 519 U.S. 102, 118, 117 S.Ct. 555, 565, 136 L.Ed.2d 473 (1996); Santosky v. Kramer, 455 U.S. 745, 759, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982); In re B.L.D., 113 S.W.3d 340, 352 (Tex.2003).
[7] The shared interests of parent and child in a just and accurate determination diverge after parental unfitness has been established. Santosky, 455, U.S. at 760, 102 S.Ct. at 1398; In re M.S., 115 S.W.3d 534, 547-49 (Tex.2003).
[8] See TEX.R.APP. P. 25.2(h), 70 TEX. B.J. 794 (Tex.Crim.App. Aug. 20, 2007). The amendments to Rule 25.2 took effect on September 1, 2007.
[9] The Family Code declares that the public policy of Texas regarding the parent-child relationship is to: "(1) assure, that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child; (2) provide a safe, stable, and nonviolent environment for the child; and (3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage." TEX FAM.CODE ANN. § 153.001(a) (Vernon 2002).
[10] See, e.g., TEX. FAM.CODE ANN. §§ 262.103, 262.105, 262.106, 262.109(b), 262.112, 262,201(a), 262.2015(c), 263.101, 263.201(a), 263.3025(a), 263.303(a), 263.304, 263.305, 263.401, 263.402(a), 263.403(6)(2), 263.405 (Vernon 2002 & Supp.2007). The Legislature adopted these statutory time limits in 1997(with subsequent amendments) to carry out the recommendation of the 1996 Governor's Committee to Promote Adoption that parental rights be terminated or families reunified within 12 months after removal and to accordingly reduce the number of children languishing in foster care and awaiting adoption. See Garza v. Tex. Dep't of Family & Protective Servs., 212 S.W.3d 373, 377 (Tex.App.-Austin 2006, no pet.); In re Tex. Dep't of Protective & Regulatory Servs., 71 S.W.3d 446, 449 (Tex. App.-Fort Worth 2002, orig. proceeding); In re T.M., 33 S.W.3d 341, 346 (Tex.App.-Amarillo 2000, no pet.); In re Bishop, 8 S.W.3d 412, 416-17 (Tex.App.-Waco 1999, orig. proceeding [mand. denied]).
[11] While it is true that the 15-day deadline for the statement of points was enacted in 2001 as part of section 263.405(b), the "preservation" requirement of subsection (i) (namely, that only those issues presented in a timely-filed statement of points may be considered on appeal) was not enacted until four years later. See In re E.A.R., 201 S.W.3d 813, 814-15 (Tex.App.-Waco 2006, no pet.) (Vance, J., concurring).
[12] We address here only cases decided after subsection 263.405(i) took effect. Before then, several courts considered ineffective assistance complaints not raised in a statement of points. See, e.g, M.S., 115 S.W.3d at 543-50; In re B.T., 154 S.W.3d 200, 205 (Tex. App.-Fort Worth 2005, no pet.).
[13] Moncrief's counsel also calls attention to evidence that his client has an IQ of 68, that she is unemployed due to disability, and that her trial counsel does not do appellate work. However, no explanation has been offered as to how the first two facts impacted the failure to file a statement of points and no ineffective assistance claim has been presented on Moncriers behalf.
[14] Notwithstanding Moncrief's recollection, a review of the record indicates that her prior court appearance was at a January 2006 status hearing. She failed to appear at permanency hearings in May and August.
[1] The client's late notice to her, attorney of her desire to pursue the appeal is Consistent with the apparent lack of interest' in doing what was necessary to, prevent the termination of her parental rights as disclosed by the record in this proceeding.
[2] On the meats of the due process argument she does not prevail for the same reasons we' have no jurisdiction. It was not that she did not have a procedure to use, that the procedure was unworkable on the facts of this case, or that she did not have the effective assistance of counsel to assist her. The reason no statement of points was timely completed was because a decision to challenge the trial court's judgment was not timely made and communicated to her attorney. She has, not raised, identified, or presented any reason why she could not have decided to appeal, communicated that decision, and have had the statement of points prepared and filed within the 15 day period. Therefore, while her new attorney and the majority want to focus on what allegedly was wrong in the timing of the hand-off between the trial and appellate attorney, I would focus on the failure of the client to timely implement the process that was available and adequate, rather than hold that the process as applied was inadequate to meet minimum due process requirements. Further, there is no explanation at all given for the total failure to ever file the statement of points by the appointed appellate attorney. Inability to file the statement of points timely, even if the late filing is excused by a due process violation, is not an excuse for the complete failure to file it.