### In the Interest of J.R.S. and H.L.M.S., Children.

#### No. 2–06–448–CV.

Court of Appeals of Texas, Fort Worth.

July 19, 2007.

Swanda & Swanda and Dean Swanda, Arlington, TX, for Appellant.

Mark C. Lane, Fort Worth, TX, for Appellee.

Panel F: DAUPHINOT, HOLMAN, and GARDNER, JJ.

## OPINION

ANNE GARDNER, Justice.

Appellant J.S. appeals from the trial court's order terminating his parental rights to his children J.R.S. and H.L.M.S. We reverse, render judgment in part, and remand for further proceedings.

### Background

M.R., the children's birth mother, and B.R., her husband, filed a petition to terminate J.S.'s parental rights. B.R. also sought to adopt the children.

The trial record is sparse. Only two witnesses testified, M.R. and J.S. J.S. was incarcerated at the time of trial, but he was represented by counsel and participated telephonically.

M.R. testified that termination of J.S.'s parental rights would be in the children's best interest. She said that J.S. had failed to pay child support within his ability during a one-year period ending within six months of the date she filed the petition. M.R. also testified that J.S. had knowingly engaged in criminal conduct which resulted in his conviction of an offense and confinement and inability to care for the children for not less than two years. On cross-examination, she testified that she was married to J.S. from 1993 until 1999. She described custody disputes between herself and J.S. after they divorced and said that J.S. was restricted to supervised visitation at some point. She testified that J.S. did not visit the children in 2001 and was sent to prison in 2002. M.R. admitted that she had not told J.S. where she and the children lived after they moved in 2001. She also acknowledged that J.S. attempted to send the children gifts at her parents' address, but her mother refused to accept them, and M.R. agreed with her mother's decision. She testified that J.S. did not provide any financial support to the children before he went to prison.

J.S. testified that he was serving a sixty-five year sentence for robbery and a life sentence for armed robbery and that his earliest expected release date was sometime in the year 2030. We will summarize his testimony regarding his convictions and sentences in more detail later in this opinion. J.S. testified that he had a very good relationship with his children. He said that M.R. interfered with his visitation privileges after their divorce and that twice she moved without telling him her new address. He denied that he was ever restricted to supervised visitation. J.S. testified that he attempted to contact the children through M.R.'s parents, but they returned some of his letters and did not provide him with M.R.'s address. When asked on cross-examination if he had any evidence to controvert a social study that said the children were "doing great in the environment they have with their stepfather and their biological mother," J.S. answered, "Of course not, no, sir." Although a social study appears in the clerk's rec-

ord, it was not offered as evidence at trial, and the trial court did not take judicial notice of it.

After hearing the evidence, the trial court orally pronounced its ruling on the record:

> The Court finds from clear and convincing evidence that termination of the parent-child relationship between [J.S.] and the children the subject of this suit is in the best interest of the children.
>
> The Court further finds from clear and convincing evidence that [J.S.] has failed to support the children in accordance with his ability during a period of one year ending within six months of the date of filing of this petition and had knowingly engaged in criminal conduct that has resulted in his conviction of an offense and confinement or imprisonment and an inability to care for the children for not less than two years from the date this petition was filed.
>
> The Court also finds it in their best interest that the termination be granted, and it is so ordered.

On November 20, 2006, the trial court signed a termination order that recites the foregoing findings and also adds a new finding:

> The Court finds by clear and convincing evidence that [J.S.] has—
>
> . . . .
>
> contumaciously refused to submit to a reasonable and lawful court order under subchapter D, Chapter 261, of the Texas Family Code; . . .

On December 19, 2006—twenty-six days after the trial court signed the final order—J.S. filed a motion for new trial combined with a statement of points on appeal under family code § 263.405(b). *See* Tex. Fam.Code Ann. § 263.405(b) (Vernon Supp. 2006). The motion for new trial was over-ruled by operation of law, and J.S. appealed.

### Discussion

#### A. Applicability of Family Code Section 263.405(b)

■ In his first issue, J.S. argues that he was not required to file a statement of points in the trial court within fifteen days of the termination order under family code section 263.405(b) because that section does not apply to a private termination proceeding. *See id.* We agree.

Section 263.405(b) provides that a party intending to appeal a final order rendered under chapter 263, subchapter E must file a statement of points on appeal within fifteen days of the date of the final order. *Id.* Family code chapter 263 is titled "Review of Placement of Children Under Care of Department of Protective and Regulatory Services." Subchapter E, under which § 263.405 appears, is titled "Final Order for Child Under Department Care." Section 263.405(a) provides that "[a]n appeal of a final order rendered *under this subchapter* is governed by . . . the procedures provided by this section." *Id.* § 263.405(a) (emphasis added). Nothing in chapter 263 suggests that the Legislature intended that the procedures of § 263.405, including the statement of points required by § 263.405(b), apply in cases where, as here, the children in question were never under Department care. We have found no Texas case holding otherwise. The cases cited by Appellees are inapposite because both concern termination proceedings brought by the Department. *See In re M.G.D.,* 108 S.W.3d 508, 516 (Tex.App.-Houston [14th Dist] 2003, pet. denied); *In re H.R.,* 87 S.W.3d 691, 703 (Tex.App.-San Antonio 2002, no pet.). We therefore hold that section 263.405(b) does not apply to termination cases not brought by the Department.

In this case, the termination proceeding did not involve the Department. Therefore, section 263.405(b) does not apply, and J.S. did not have to file a statement of points for appeal. We sustain his first issue. We do not reach J.S.'s eighth issue, in which he argues that section 263.405(b) violates the separation of powers doctrine, and we deny as moot his motion to extend time to file a statement of points. *See* TEX.R.APP. P. 47.1.

## B. Legal and factual sufficiency

In his second through seventh issues, J.S. challenges the legal and factual sufficiency of the evidence to support the trial court's findings in support of termination under family code section 261.001.

### 1. Applicable law

■ A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex.2003). In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. TEX. FAM.CODE ANN. § 161.206(b) (Vernon Supp. 2006); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20–21; *In re E.S.S.*, 131 S.W.3d 632, 636 (Tex. App.-Fort Worth 2004, no pet.).

■ In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subdivision (1) of the statute and must also prove that termination is in the best interest of the child. TEX. FAM.CODE ANN. § 161.001 (Vernon Supp.2006); *In re J.L.*, 163 S.W.3d 79, 84 (Tex.2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987).

■ Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence. TEX. FAM.CODE ANN. §§ 161.001, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex.2002). This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex.1980); *In re K.W.*, 138 S.W.3d 420, 425 (Tex.App.-Fort Worth 2004, pet. denied). It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM.CODE ANN. § 101.007 (Vernon 2002).

■ The higher burden of proof in termination cases elevates the appellate standard of legal sufficiency review. *J.F.C.*, 96 S.W.3d at 265. The traditional no-evidence standard does not adequately protect the parent's constitutional interests. *Id.* In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *Id.* at 265–66. We must review all the evidence in the light most favorable to the finding and judgment. *Id.* at 266. This means that we must assume that the factfinder resolved any disputed facts in

favor of its finding if a reasonable factfinder could have done so. *Id.* We must also disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We must consider, however, undisputed evidence even if it is contrary to the finding. *Id.* That is, we must consider evidence favorable to termination if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *The City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). If we determine that no reasonable factfinder could form a firm belief or conviction that the grounds for termination were proven, then the evidence is legally insufficient, and we must generally render judgment for the parent[s]. *J.F.C.,* 96 S.W.3d at 266; *see* TEX.R.APP. P. 43.3.

■ This higher burden of proof also elevates the appellate standard of factual sufficiency review. *In re C.H.,* 89 S.W.3d 17, 25 (Tex.2002). "[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance." *C.H.,* 89 S.W.3d at 25. In considering whether the evidence of termination rises to the level of being clear and convincing, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *Id.* Our inquiry here is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated the relevant conduct provisions of section 161.001(1) and that the termination of the parent's parental rights would be in the best interest of the child. *Id.* at 28.

The distinction between legal and factual sufficiency lies in how we review the evidence. *J.F.C.,* 96 S.W.3d at 266. In a factual sufficiency review, in determining whether the evidence is such that a factfin-

der could reasonably form a firm belief or conviction that its finding was true, we must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *Id.* If we reverse on factual sufficiency grounds, then we must detail in our opinion why we have concluded that a reasonable factfinder could not have credited disputed evidence in favor of its finding. *Id.* at 266–67.

■ Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future;

(3) the emotional and physical danger to the child now and in the future;

(4) the parental abilities of the individuals seeking custody;

(5) the programs available to assist these individuals to promote the best interest of the child;

(6) the plans for the child by these individuals or by the agency seeking custody;

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9) any excuse for the acts or omissions of the parent.

*Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976). These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. *C.H.,* 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the children. *Id.* On the other hand, the presence of scant evidence relevant to each *Holley* factor will not support such a finding. *Id.*

### 2. Best interest

■ In his seventh issue, J.S. argues that the evidence is factually insufficient to support the trial court's finding that termination is in the children's best interest. We agree.

The record reflects almost no evidence touching on the *Holley* factors. There is no evidence of the children's desires. There is no evidence of the emotional and physical needs of the children now and in the future. There is no evidence of emotional and physical danger to the children now and in the future. The is no evidence of M.R.'s and B.R.'s parental abilities.[1] There is no evidence of programs available to assist them to promote the best interests of the children. There is no evidence of their plans for the children. There is no evidence of the stability of M.R. and B.R.'s home.

J.S.'s imprisonment for robbery potentially touches the eighth *Holley* factor, acts or omissions which may indicate that the existing parent-child relationship is not a proper one. But there was no evidence that J.S.'s imprisonment had any effect on the day-to-day lives of the children—who have lived with M.R. since the divorce and

before J.S. was imprisoned—or their best interests. And the crimes for which he was convicted did not involve J.R.S. and H.L.M.S. or any other children. *Cf. Rogers v. Dep't of Family & Protective Servs.,* 175 S.W.3d 370, 378 (Tex.App.-Houston [1st Dist.] 2005, pet. dism'd w.o.j.) (holding evidence factually sufficient to support best-interest finding when father was serving lengthy prison sentence for causing severe bodily injury to his child).

Looking beyond the *Holley* factors, our review of the record finds no other evidence regarding the children's best interest, and, significantly, Appellees' brief points us to none. Based on the entire record before us, we hold that while there is slight evidence relevant to the eighth *Holley* factor, a factfinder could not reasonably form a firm conviction or belief that the termination of J.S.'s parental rights would be in the best interest of the children. *See C.H.,* 89 S.W.3d at 25. Therefore, the evidence is factually insufficient under the clear and convincing standard to support the trial court's best-interest finding. We sustain J.S.'s seventh issue.

### 3. Contumacious refusal to submit to an order under subchapter D, chapter 261

■ In his second and third issues, J.S. argues that the evidence is legally and factually insufficient to support the trial court's finding that he contumaciously refused to submit to a reasonable and lawful court order under family code subchapter D, chapter 261. *See* Tex. Fam.Code Ann. § 261.001(1)(I). We agree.

■ Subchapter D of chapter 261 concerns the Department's investigations of child abuse or neglect allegedly committed

---

1. The social study contained in the clerk's record reflects information potentially relevant to this and other factors, but as we have already noted, the social study was not offered as evidence, and the trial court did not take judicial notice of it.

by a person responsible for a child's care, custody, or welfare. TEX. FAM.CODE ANN. §§ 261.301–.316 (Vernon Supp.2006). There is no evidence that the trial court made any orders under subchapter D or that J.S. failed to submit with any such order. Appellees argue that J.S. failed to pay child support as ordered in the final divorce decree, but an order to pay child support is not an order under chapter 261, subchapter D. Moreover, Appellees did not plead failure to submit to such an order as a ground for termination. Termination can only be upheld on a ground that was both pleaded by the party seeking termination and found by the trier of fact. *Vasquez v. Tex. Dep't of Protective & Regulatory Servs.*, 190 S.W.3d 189, 194 (Tex.App.-Houston [1st Dist.] 2005, pet. denied).

Therefore, we sustain J.S.'s second and third issues.

### Conclusion

Having sustained J.S.'s first, second, third, and seventh issues and not reaching his remaining issues, we reverse the trial court's order; render judgment in J.S.'s favor on the ground of contumacious refusal to submit to an order under subchapter D, chapter 261; remand the remainder of the case for further proceedings; and deny as moot J.S.'s motion to extend time to file a statement of points under § 263.405(b). *See* TEX.R.APP. P. 43.2(c), (d).